WILLIAM CHAPMAN *against* THE EXECUTORS OF WILLIAM HOLMES, deceased.

A covenant that one is lawfully seized of land, when in truth he is not, is broken as soon as made; and such a covenant cannot be assigned, so as to enable the assignee to maintain an action for a breach that happened before his time.

. So, also, a covenant that a grantor has good right to grant, sell, and convey land, when he has not such right, is broken as soon as made, and not assignable.

The rule is the same as to covenants against incumbrances, when there are incumbrances existing, at the time of sale.

If the vendor of lands in fee covenants, for himself and his heirs, that he will warrant and defend the land to the vendee, his heirs and assigns, an assignee of the vendee who is evicted, may maintain a personal action of covenant against the executors of the vendor; and it is not necessary to maintain the action, to aver that notice of the pendency of the suit, by which the plaintiff was evicted, was given to the defendant.

———

This was an action of covenant. The facts in the case are fully stated in the opinion of *Justice Ford.* The case came before the court on demurrer to the declaration. *A. O. Dayton* for the defendants, and in support of the demurrer, said: the declaration of the plaintiff sets forth breaches of the following covenants, said to be contained in a deed for certain land from William Holmes, the testator, to one Charles Jones, *viz.*

1. Covenant of seisin. 2. Covenant of power to convey. 3. Covenant against incumbrances. 4. Covenant to warrant and defend.

The plaintiff claims damages as assignee of the said Charles Jones. 1. By conveyance from the sheriff under a judgment and execution against Jones; and 2. By conveyance from Jones himself.

The case came up on demurrer to the declaration.

I. The *first* objection to the declaration is, that an action founded upon a breach of the covenant of seisin will not lie by an assignee.

This covenant if broken at all is broken as soon as made, and becomes a chose in action which is not assignable.

1. The covenant is broken as soon as made. *Vid. Dyer,* 303; *Co.* 9, 60; 1 *Penn. Rep.* 407; *Lot* v. *Thomas, Hob.* 12; *Shep. Touchst.* 170; 4 *Johns. Rep.* 72; *Cro. Jac.* 304. This appears very clearly from the language of the covenant.

2. The covenant after it is broken is a chose in action, not assignable. *Vid.* 3; *Leon.* 51; 2 *Vent.* 278; 4 *Cranch,* 421; *Bac. Ab. Coven.* 73, 2 (a.) *Cro. Eliz.* 863; *Com. Dig. Cov. B.* (3) *ent.* 32; *Do. B.* (1) *ent.* 3; 4 *Johns. Rep.* 72; 1 *Salk.* 199; 1 *Vent.* 175; 2 *Lev.* 26, *s. c.*; 4 *Bos. & Pull.* 158.

In order that the assignee should take advantage of the covenant it must run with the land; but if this covenant were broken, then no land passed to the assignee, and of course no covenant which could only run with it.

II. The *second* objection is, that an action will not lie by an assignee, upon a breach of the covenant that the grantor has power to convey. This covenant is considered of the same import with that of seisin; of course the foregoing authorities and remarks are equally applicable. 4 *Crui. Dig.* 78; *Sugd. L. of Vend.* 373; 3 *Lev.* 46. This appears also from the words and nature of the covenant.

III. The *third* objection is, that an action will not lie by the plaintiff as assignee, upon the covenant against incumbrances as stated in the declaration.

This covenant, if broken at all, was like the two former, broken as soon as made. *Shep. Touchst.* 172.

It is not in fact a distinct covenant, but forms part of the covenant of power to convey. *Shep. Touchst.* 172.

There is nothing to separate it from the latter; it forms part of the same sentence and the same clause.

The word " that," seems to have been intended to designate and separate the other covenants.

A much stronger case of construction. 2 *Bos. & Pull.* 13; and there is a similar case in which the whole was con-

strued to form one qualified covenant in the state of Pennsylvania. 2 *Binn. Rep.* 99, 102.

This covenant, when separate, is generally expressed in future time : as, that the land shall be holden free of incumbrance. *Sugd. L. of Vend.* 373, and the precedents passim.

A covenant running with land is always expressed in future time. 2 *Mass. Rep.* 457, *arg. ref. Shepp. Abridgs.* 455.

The same arguments and authorities therefore, which were adduced respecting the two former covenants, apply equally to this.

IV. The *fourth* objection is, that, taking this as a separate covenant against incumbrances, and as passing to the assignee, the breach of it is not well assigned.

It ought to be specially assigned; a general assignment negativing the words of this covenant is bad. 2 *Mass. Rep.* 437, 461; *Marston* v. *Hobbs. Cro. Jac.* 425; *Broking* v. *Cham.*

The rule as to assigning breaches is, that a breach assigned in the words of a covenant, where the words do not necessarily import a breach, is not good. *Vin. Ab. (Cov. A. a.) Com. Dig. Pleader, (C.* 49) *ent.* 1; *Cro. Eliz.* 914; *Chantflower* v. *Priestly. Cro. Eliz. Lanning* v. *Lebering's* case.

Another rule is, that a breach must be certain and express. *Com. Dig. Pleader, (C.* 48) and *ent.* 1, 2, 4.

The assignment of this breach violates both rules. It is as much in contradiction of the latter rule, as the cases mentioned in *Comyn*, it alleges incumbrances without specifying them.

It violates the former rule, because the covenant against incumbrances does not extend to all incumbrances, without exception. *Dyer* 328; *Hob.* 35; *Vaugh.* 121; 2 *Mass. Rep.* 437.; *Cro. Jac.* 425; *Do.* 315, 444; *Leigh* v. *Gotyer.*

It does not extend to things of common right. A remitter is no incumbrance. *Vin. Ab. Tit. Incumbrancer.*

The breach does not shew an injury to the plaintiff, it refers to the time of making the indenture before he had any interest in the premises. *Com. Dig. Pleader,* (*C.* 47) *ent.* 12.

He should have shown that the incumbrance lasted until his time, and that he discharged it. *Vid. Preced.* 3 *Chit.* 337. 2 *Mod. ent.* 122, *ref. Skin.* 397. 2 *Bac. Ab.* 87, *ref. Salk.* 196.

Otherwise, if this be a covenant running with the land, the grantor might be subjected to pay damages to many successive assignees.

The first grantee may have discharged the incumbrance.

It may be contended that the statement of eviction, which follows the breach of covenant of warranty, is to be taken as part of the breach of the covenant against incumbrances.

. This cannot be, because the breaches are as distinct as the covenants themselves ; and this statement is annexed to, or forms part of the breach of the next covenant, and is in no manner united with the breach of the covenant against incumbrances.

If, however, it be taken as a part of the breach of the last mentioned covenant, it shows clearly that the covenant was broken as soon as made, inasmuch as it shows that other persons had lawful title to the premises at the time of their pretended conveyance to Jones ; and, of course, that the grantor had not power to convey free of incumbrance.

It shows, too, that no land was conveyed with which the covenant could run.

V. The *fifth* objection is, that an action of covenant will not lie upon a warranty on an eviction of a freehold.

The law on this subject, when particularly examined, is very clear and unconfused.

This covenant of warranty, when applied to a freehold, has always had a peculiar and technical signification ; its signification always has been, that if the covenantee was evicted from the freehold, the covenantor would give him lands of equal value in its stead.

It is in all respects a covenant real. Covenants real are of two kinds : 1. Where a man binds himself to pass a real thing ; and 2. Where the covenant runs with the land : this is a covenant real in both senses of the term. *Co. Lit. sec.* 733, *p. t.* 736, *p.*

In order to understand distinctly, its meaning and effect, it is necessary to go back to its origin. This is found undoubtedly in feudal times.

Under the feudal system the lord, in return for the homage or fealty of the vassal, was bound to secure to him his feud : this was implied by the words used in granting it, *viz. dedi et concessi*, and was what is called warranty in law.

The oath of fealty was introduced on the continent with life estates ; homage, when they became hereditary. 1 *Sull. L. Lec.* 140, 6–223.

By the feudal warranty the lord, if he had not lands to give, was bound to furnish a recompense in money. 1 *Sull. Law. Lec.* 228–151. *Co. Lit. sec.* 697, *p.* (1.)

But the feudal law never was introduced into England in its full extent, and in that country the lord was never bound to pay money. 1 *Sull. L. Lec.* 228.

It seems that after the introduction of the feudal law into England, every kind of homage, but nothing else, bound the lord to warranty in law ; but afterwards it was confined to homage ancestral. *Co. Lit. sec.* 697, *p.* (1.)

In other cases especially, after the stat. of *quia emptores*, when it became customary to alien feuds, warranty in law had a substitute in express warranty. *Sull. L. Lec.* 230. 2 *Blackst. Com.* 300.

This was rather more confined than warranty upon homage ancestral ; in the latter the heir was bound to the value of all his lands ; in the former only of those received from the ancestor who created the warranty.

In other forms of alienation introduced since the statute of *quia emptores*, no warranty was ever implied, and in them express warranty was inserted in the place of it. 2 *Blackst. Com.* 300.

In all these cases and at all these different times, warranty, whether express or implied, was substantially the same thing, *to wit*, strictly a covenant, real, binding the covenantor and his heirs, in case of eviction, to give lands of equal value in recompense for those lost.

And it is still the same thing.

The definition of warranty may be found in *Shep. Touchst.* 181. *Co. Lit. sec.* 697.

The form, as anciently used, may be found in *Shep. Touchst.* 181. 2. *Blackst. Com. App.* 1.

Personal covenants, such as seisin, quiet employment, &c. which bind the personal estate and representatives, were in process of time, when personal property became larger, found to be more convenient, and have been generally substituted; but in many cases the old warranty has also been retained, and it is found in the very deed upon which the action is brought, in the ancient words and form, and without material addition. 2 *Black. Com.* 340.

These covenants, or some of them at least, would be altogether superfluous, were warranty considered as in any respect a personal covenant.

Now, as formerly, the warrantor binds himself and his heirs only, and the word warrant, which constitutes the essence of the warranty, is still used. *Co. Lit. sec.* 733, *n.* [*e.*]

For an explanation of the language of a warranty, and particularly for the meaning of the word " defend " see *Co. Lit. sec.* 733 and *n.* [*c.*]

The only two modes of proceeding upon an ancient warranty, were *voucher* and *warrantia chartæ*, which were real actions, if we except rebutter. *Co. Lit. sec.* 697; *Shep. Touchst.* 182–3; 2 *Blackst. Com.* 300.

It is necessary in investigating this subject, always to bear in mind the distinction between a warranty of a freehold, and a covenant to warrant an estate for years.

In the latter case, it is in some sort a personal covenant, and damages may be recovered. *Hob.* 28, *Roll* v. *Osborn.*

A warranty, strictly understood, cannot be annexed to a lease for years; there must be a freehold estate to support it. *Shep. Touchst.* 186; *Co. Lit. sec.* 74, 1 *p.* [*e.*] *Com. Dig. Gan. E.*

An action of covenant would not lie upon the warranty on an eviction of the freehold. · 2 *Bac. Ab.* 67; *Hob.* 4; *Yelverton* 139, same case. 1 *Keb.* 821; *Brownl.* 19; *Dyer* 338.

It is true, that where there is warranty of a freehold, and the tenant is evicted for years, he might have covenant; but this was because he could not proceed by voucher or *warrantia chartæ* and would otherwise be left without redress. *Com. Dig. Cov. A.* 4.

That covenant would not lie upon eviction of the freehold, appears also from all the cases cited respecting voucher, *warrantia chartæ* and rebutter, which evidently exclude any other remedy.

Such having been the law in ancient times, beyond all doubt, it must be so still, unless it has been altered.

· But when or how has such alteration been made?

The common law on this subject has never been changed by statute, either in England or New Jersey.

The ancient form of proceeding by voucher and *warrantia chartæ* it is true, has become in a great measure obsolete; but does that circumstance alter the law or charge the nature of a warranty.

Voucher has been long disused, except in common recoveries, and the last instance perhaps, of *warrantia chartæ* was in the time of *Jac.* 1, *Ballet* v. *Ballet, Godb.* 151, mentioned by *Kent C. J.* 4 *Johns. Rep.* 22

The old modes of proceeding upon warranty have become obsolete, not because a new one has been enacted or adopted, but because warranties themselves have given place to other covenants, upon which personal actions can be brought.

Since vouchers and *warrantia chartæ* have been disused, has covenant been brought upon a warranty, on eviction of a freehold in any one case in England? or is such a case to be found in the New Jersey reports?

Warranties are not often to be found in modern English conveyances, and where they are, they are not declared on. Case of *Dudley* v. *Folliot*, 3 *T. R.* 584; 2 *Bos. & Pull.* 13.

The principle contended for is expressly laid down by *Judge Vanness*, and indirectly by *C. J. Kent; 4 Johns. Rep.* 11, 21.

VI. If the principle above contended for, be incorrect, still the covenant is not so set out in the declaration, that the present action can be sustained upon it.

The covenant, as stated in the declaration, extends no farther back than the time of drawing or filing the declaration, or at most, of commencing the action.

The terms "now" and "hereafter," signify time present and to come, dating from the period at which they were used; "shall" and "will" indicate time future to the same period; whereas the time of executing the indenture was then past.

This may appear more plainly, by substituting for "now" and "hereafter," terms of the same meaning, *viz.*, "at the present time," and "after the present time," and by inserting the word hereafter, after the words shall and will.

If the warranty entered into, at some previous period, had been intended to take effect at a time present at the drawing of the declaration, and immediately subsequent, it would have been correctly expressed by the language here used.

The case is to be determined by the rules of grammar and the common signification of language.

The past tense should have been used. *Vid.* 2 *Chit.* 196. *n.* (*h.*)

The time referred to in this and in the other covenants, cannot be the same. Different tenses are used and different adverbs.

A cause of action is therefore not shown, previous to this suit.

VII. Taking it for granted that a personal action will lie upon a warranty, the breach in this case is ill assigned.

. The breach here stated is, that the grantor did not warrant and defend the grantee in the peaceable possession of the premises.

This is a breach of the covenant for quiet enjoyment, which goes to the possession. Warranty applies to the title.

This breach appears to have been drawn from the form laid down by *Chitty* in case of *covenant* for quiet enjoyment. 3 *Chit.* 326.

The breach should be assigned in the words of the contract, either negatively or affirmatively, or in words which are co-extensive with the import and effect of it. 1 *Chit.* 326.

Breach must not be larger than covenant. 1 *Chit.* 328; *Com. Dig. Plead. C.* 47.

VIII. In order to shew, in the declaration, a liability on the part of the defendants on the covenant of warranty, it ought to have been averred that notice of the suits brought to recover the land was given to them, and that they were called upon to defend them.

This is implied in the very nature of the covenant of warranty.

However the mode of proceeding, upon a breach of this covenant, may have been changed, certainly the meaning of the terms used, must remain the same.

What then was the original meaning of the word warrant, which proved the essence of the warranty?

It is a mere translation of the latin word *warrantizo*, which not being pure latin, was no doubt framed to signify the feudal warranty.

What then was the obligation imposed by the feudal warranty?

It was that the lord should successfully defend the title of the vassal, to his feud, when called upon.

Notice was required to be given. The lord must be vouched. *Co. Lit. sec.* 697, *p.* 1; *Vid.* 4 *Mass. T. R.* 348.

The word is said, by *Sullivan*, to be derived from war, because the mode of trial was then by combat. *Sull. L. Lec.* 228.

Warrant must not then be understood in its modern signification, as commonly used, but as a translation of, and conveying the same idea with the word *warrantizo*.

By the civil law too, as practised both at Rome and in France, it has always been necessary for the warrantee, as soon as disturbed, to give notice to the warrantor, and call upon him to defend the property. *Co. Lit. sec.* 609, *p.* (1.)

Reason and justice also demand that it should be so.

If the warrantor is bound to secure the title, he ought to know when it is invaded, and by whom; which knowledge must be supposed to belong to the tenant.

Were notice not necessary, a person who had made an unfortunate purchase, might by refusing to bring forward the title deed, or by a negligent defence, suffer a third person to recover the land, in order that he might receive back the consideration money from the waraantor.

It would open a door for collusion and fraud.

*William N. Jeffers*, contra.

FORD, J.    William Chapman declares, that William Holmes bargained and sold, in his life time, certain lands to one Charles Jones, his heirs and *assigns*, and covenanted for himself, his heirs, executors and administrators, that he was, at the time of making said deed, the true and lawful owner of the lands; that he had full power and lawful authority to convey the same in fee simple; freely and clearly exonerated and discharged from all encumbrances; and that he would for *himself* and his *heirs*, forever warrant and defend the said lands unto the said Charles Jones, his *heirs* and *assigns*, against all persons lawfully claiming or to claim the same.    William Chapman then shews, that Charles Jones bargained, sold and assigned the same lands to him, whereby he became *assignee* thereof; and as assignee, he assigns the following breaches; *First*. That William Holmes, was not the lawful owner of the land at the time he made the

said deed to Charles Jones; *Second.* That he had no lawful power or authority to convey the same in fee simple; *Third.* Nor to convey free of incumbrances; *Fourth.* And that he did not warrant or defend him, the assignee, in peaceable possession of said lands; and he shews that Anna and Robert Johnson had, at the time Holmes made the said deed, lawful right and title to the said lands, and by virtue thereof evicted him, the assignee, by due process of law, and against his will; by reason whereof, &c. To the declaration and breaches so assigned, the defendants put in a special demur-rer, and it will be proper to consider them in their order.

1. The covenant, that William Holmes is true and lawful owner is in the *present tense,* and was broken; if he was not such, the moment he made the deed. It is so laid down in *Shep. Touch.* 170. "If one seized of land doth alien it, and covenant that he is lawfully seized, when in truth he is not, but some other hath an estate in it before, *in* this case the covenant is broken as soon as it is made." In *Bradshaw's* case, 9 *Rep.* 60, the breach is laid on the *very day* of making the covenant. In *Lot* v. *Thomas, Pennington,* J. calls it a present act, and if the covenants hath not title, or if not seized, the covenant is broken as soon as made. See also 4 *Johns.* 72. It is undeniable that this covenant was broken, therefore, in the time of Charles Jones, and that *he* might have sued for these damages. The right to them was clearly vested in him. Now nothing is settled with greater clearness than that a right to sue for damages is not assignable, If it were so, a man might transfer his right to sue for damages in slander, trespass, or assault and battery. It is a *chose* or thing in action, the assignment of which was maintenance, and clearly prohibited at the common law. For this reason a bond could not be assigned, so that the assignee could have an action in his own name, without the all powerful aid of an act of the legislature. It is equally so in covenant. In *Bac. Ab. Covenant E.* 5, note *a.* it is laid down thus, "An assignee cannot sue upon a breach of cove-

nant that *happened before his time !*"  In *Lewis* v. *Ridge*, *Cro. Eliz.* 863, the whole court resolved that the covenant being broken before the plaintiff's time, it was a *chose in action* that could not be transferred over, and judgment was given against him.   It is so laid down in *Com. Dig. Covenant B,* 3.   " So covenant does not lie for an *assignee* upon a breach done *before his time.*"   These authorities, beside others, which, if necessary, might be cited, shew that William Chapman the assignee cannot maintain an action for breaches that happened before his time.

The *Second* breach is also upon a covenant in the present tense, that he (Holmes) had good right to the lands *at the time he made the deed.*   If he had not, the covenant was broken, and he might have been sued on it the day it was made.   The same is true of the *third* covenant, that there were no incumbrances on the land at the time he sold it; beside which there is a fatal objection to the *third* breach that no incumbrances are set out.   *Com. Dig. Pleader C.* 48, 49; *Cro. Eliz.* 914; 9 *Mass.* 433, *Marston* v. *Hobbs.*

The *fourth* and last covenant is different in character from all the foregoing; it is, that William Holmes for *himself* and his *heirs, will* warrant and defend the land to Charles Jones, his heirs and *assigns* forever.   It is one that must necessarily have continuance and run with the land, as it is to do something *in future.*   An assignee in whose time it is broken, by eviction, may undoubtedly have the benefit of it. Indeed, the defendants do not deny but he may; but being the ancient warranty, they contend that he can have that benefit only in the ancient way, by *voucher, warrantia charta* or *rebutter ;* that there is no other way; and that a personal action of covenant, like the present, will not lie upon it.

To support their position, they refer to *Co. Lit. sec.* 697, where *Lord Coke* says, " that *warrantia* is a covenant real annexed to lands and tenements, *whereby* a man and his heirs are *bound* to warrant the same, and either upon *voucher* or

judgment in a writ of *warrantia chartœ*, to yield other lands-
and tenements to the value of those that shall be evicted by
a former title, or else may be used by way of *rebutter*."
This passage shews that the remedies there mentioned
might be had, but it by no·means proves that an *action of
covenant* would not likewise lie. We are likewise referred to
section 734, as one in which he declares that there is a diver-
sity between a *warrantia* that is a covenant real, which bind-
eth the party to yield *lands or tenements* in recompense, and
a covenant annexed to the land which is to yield *but dam-
ages*." Now it is true that *every* covenant real did not bind
to yield *lands* in recompense, for some bound only to yield
*damages ;* he does not say the former bound to yield lands-
*only*. We are referred also to *Bac. Ab. Covenant C.* where
the author says : " It seems *by the better opinion* that upon
the eviction of a freehold, *no action of covenant* will lie on a
warranty, for the party might have had his *warrantia
chartœ* or *voucher*." Now this shews that there were res-
pectable opinions *both ways*. The defendant's counsel
confidently asserts, that there is no case of eviction of
·freehold to be found in the English books, where an *action
of covenant* has been sustained on a warranty. Suppose this
assertion to be true, it may only prove that the tenant, in
ancient times liked the ancient remedies *best*. And it is not
in the least surprising that he did so. *Voucher* gave him
the invaluable power, when a writ was brought against him
for the land, *to stay the suit* until his warrantor came in to·
defend it ; or if he failed and judgment passed against the
tenant, he (the tenant)· got judgment *in the same suit* to·
recover over lands of *equal value* against the warrantor.
There was no trouble of a cross action. The judgments-
against him and the judgments in his favor were simulta-
neous. The same day that he lost one farm he got another
as good, or the fair value of it. But the *warrantia chartœ*
afforded still greater advantages. Instead of waiting till
foreseen trouble arrived, he might anticipate it, before evic-
tion, by suing out this writ, which bound all the lands of

the warrantor and his heirs from the time it was sued out. *Shep. Touch.* 184. Now if the tenant always preferred the better remedy, can it be inferred that there was no poorer one at his option? If, upon a judgment to recover other lands, it appeared that the warrantor had no other, it is not clear that the tenant, under the same judgment, could not recover *the value in damages.* The ulterior proceedings on a judgment, to recover over, are not at this day familiar. The tenant recovered land as good in quality and quantity, or failing in that, recovered *in value.* In 3 *Bl. Com.* 300, the author, who is very accurate, says, "that the tenant may bring a *warrantia chartæ* to compel him to assist him with a good plea of defence, or else to render (damages and) the *value* of the land." Since the ancient remedies became obsolete it is in vain to tell a tenant he can have them, for he cannot; why, therefore, should he not recover the value in an action of covenant? If he cannot, and if the ancient remedies are now gone, how passing strange it will be that here is a solemn *covenanta*, right but no remedy! The ancient clause of warranty does not contain, to be sure, the identical word "*covenant;*" but any form of words amounts to it which shews the parties concurrence to the performance of a future act. *Bac. Ab. Covenant A. Lord Coke* expressly calls *warrantie* a covenant. And wherever there exists one, the law has provided a remedy by action of covenant. *Bac. Ab. tit. Covenant.* In *Marston* v. *Hobbs*, 2 *Mass.* 433, *Chief Justice Parsons* says, "At common law, the tenant after he had lost his land, might bring a personal action of covenant, on the covenant to warrant and defend, and recover a satisfaction in damages." The theory and principles of law appear to me very fully to warrant this opinion. In modern conveyancing the covenant for quiet enjoyment may be as good; but still this is a covenant, and when broken, there is no reason why an action of covenant should not lie upon it.

But there is another objection, that though William Holmes is bound to this warranty, himself and heirs, he did

Chapman *v.* Holmes.

not bind his *executors* by name, and therefore the action does not lie against *them.* · My answer to this is, that the covenantor bound *himself*, and the general rule is, ·that where *he* is bound·by a covenant, his executors, though not named, shall be bound also. *Bac. Ab. Covenant E.* "If a man covenant for himself only, for quiet enjoyment, and doth not say in the covenant, his executors, administrators,. &c., yet his executors and administrators are bound," *Shep. Touchst.* 178 *Doug.* 43. 3 *Com. Dig. Cov. C,* 1. Such is the general rule, and this case is not within any of the exceptions.

Another objection is that no notice was given of the pendency of Johnson's suit; or if given it is not averred. Now I admit that a warrantor, without being vouched, could not become a party so as to defend by a plea in his own name; but *warrantia chartæ* would lie before suit, and therefore required no notice. So neither is it requisite in a covenant. If the eviction was on elder title, by judgment at law, it is plenary evidence; unless it was by fraud. *Hamilton* v. *the Ex'rs. of Cutts.* 4 *Mass.* 349. It is not necessary to maintain the action, though useful to rebut an allegation (if any should be made) that judgment against the tenant was obtained by his fraudulent connivance. But notice is no part of the cause of action. It would be as necessary in covenant· for quiet enjoyment, after an eviction by due course of law, as in this case; yet it is never done. 3 *Chit.* 337.

On the whole, an assignee cannot maintain an action on the *first, second* or *third* covenants in this case, upon breaches which happened before his time, and as to them the demurrer must be sustained; but he may well have an action·upon the general warranty, for an eviction in his own time, and upon that breach the plaintiff must have judgment.*

*Note.—In accordance with this opinion is the decision of the Supreme Court of the State of New York, in the case of *Townsend* v. *Morris*, and *Vancourtlandt, Executors of Vancourtlandt*, 6 *Cowen's Rep.* 123, and it may be considered as settled in that state, that a warranty of lands in a deed in fee, is the subject of a personal action of covenant against the executors of the warrantor, and the grantee is not confined to his voucher or *warrantia chartæ*.

DRAKE, J. This is an action for breach of covenant. The covenants declared on are contained in a deed of conveyance from William Holmes, the defendant's testator, to one Charles Jones, his heirs and assigns. Jones conveyed to the plaintiff; who having since been evicted from the premises, now seeks redress upon the covenants contained in the original conveyance from Holmes. The executors deny the plaintiff's right, to recover against them, on any of those covenants.

The first is what is usually called the covenant of seisin; a covenant which is broken, if broken at all, as soon as made. *Shepherd's Touchstone* 170; *Pennington's Reports* 407; 2 *Johnson's Rep.* 1; 3 *Johnson* 63; 2 *Mass.* 465. It was broken, as between William Holmes the covenantor, and Charles Jones. An action could have been immediately maintained on it by Jones. But Jones assigns the land to Chapman the plaintiff. Does the right of action pass with the land? it has been repeatedly decided that it does not. It is contrary to the principle of the common law, which will not permit a chose in action to be assigned. 4 *John Rep.* 72; *Croke Eliz.* 863; *Penn. Repts.* 407.

The defendant's counsel cited, contra, 4 *Term Repts.* 75. That was an action of covenant for quiet enjoyment, brought by a lessee against the assignee of the land; and it was decided that the assignee, and the heir of the lessor were liable on this covenant, upon the eviction of the lessee. The case, in 5 *Coke* 17, is upon the same covenant, brought by the assignee of the lessee after eviction, against the lessor. Neither of these cases oppose those first cited; and the law seems to be well established, that no right of action on the covenant of seisin passes to the assignee of the land; and therefore the demurrer to this breach is well taken.

The next covenant is, that the said William Holmes and wife had power and authority to grant, sell and convey the said land to the said Charles Jones, his heirs and assigns. This covenant is of the same import with the first, and the

action on it is liable to the same objections.  4 *Cruise Ch.* 5.
But it is added that they had the right and power to sell
the said lands, "free and clearly acquitted, exonerated and
discharged of and from all manner of other and former
deeds, gifts, grants, &c., and all other incumbrances that
might in any way mar, hurt, injure, or diminish the same
in title or estate." This is treated, by the counsel of the
plaintiff, as a distinct covenant against incumbrances.  But
it appears to me to be a part of the preceding covenant,
limiting or restraining it, if it varies it at all.  The covenant
against incumbrances known to the English conveyancers,
and referred to in the English books, looks to the future,
and is usually annexed to the covenant for quiet enjoyment.
See appendix to 2 *Vol. Bl. Comm.*  And the English
decisions respecting their covenant against incumbrances,
cannot with any propriety be applied to the case before us.

The remaining covenant is that of warranty.  It is said
in *Bacon's Abridgement, title Covenant C.* to be the better
opinion, that a personal action will not lie on this covenant
upon an eviction of the freehold.  The same idea is suggested
by *Van Ness,* Justice, in 4 *Johnson, p.* 11.  It is certainly
not one of the covenants introduced into English convey-
ancing in lieu of the ancient warranty ; and, in New York,
the English covenants appear to be adopted.  In Massachu-
setts covenants of this kind are used, and personal actions
sustained upon them without objection.  In New Jersey, I
believe it is almost universally in use ; and considering that
the ancient mode of proceeding on warranties is nearly
obsolete in England, and never had existence in this state,
we cannot for a moment suppose that such a covenant is
now introduced with a view to those ancient remedies, or
that the grantee, should be confined to them, to obtain
redress after eviction.  The principal difficulty, on my
mind, arose from the mode in which the covenant was
introduced, and which might be considered to furnish
ground for a peculiar construction.  The preceding cove-

nants expressly bind the grantor, his heirs, executors and administrators, and this succeeds them and begins with the words: "and lastly, the said William Holmes, for himself and his heirs," &c. But it is a general rule that whenever a testator is bound by a covenant the executor shall be bound. *Croke Eliz.* 553. 2 *Wash.* 153. There is nothing in the nature of this covenant to vary that general principle; and the intent to confine the obligation to the testator and his heirs, not appearing by any means certain, I am inclined upon the whole to say, that the action may be sustained against the executors on this covenant.

Judgment for the plaintiff.